**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0773-17T3

CYNTHIA A. CORDOVA,

     Appellant,

v.

BOARD OF REVIEW,
NEW JERSEY DEPARTMENT
OF LABOR and BAYADA
HOME HEALTH CARE, INC.,

     Respondents.

_____

Submitted November 15, 2018 – Decided December 10, 2018

Before Judges Nugent and Reisner.

On appeal from the Board of Review, Department of Labor, Docket No. 122,945.

Cynthia Cordova, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Emily M. Bisnauth, Deputy Attorney General, on the brief).

Respondent Bayada Home Health Care, Inc., has not filed a brief.

PER CURIAM

Claimant Cynthia A. Cordova appeals from a September 14, 2017 decision of the Board of Review, affirming a July 20, 2017 determination of the Appeal Tribunal. Because the Board's decision is supported by substantial credible evidence, we affirm. See Brady v. Bd. of Review, 152 N.J. 197, 210 (1997).

Before we discuss the merits, we note the limited scope of this appeal. In her July 20, 2017 decision – which the Board affirmed – the appeals examiner agreed with the Deputy that claimant was ineligible for unemployment benefits from May 21, 2017 through July 8, 2017, because she was unavailable for work. See N.J.S.A. 43:21-4(c)(1). However, the appeals examiner remanded to the Deputy for an initial determination of "[t]he matter of the claimant's eligibility for benefits during later reported weeks of unemployment." The Deputy's decision on remand is not before us. Consequently, our opinion only addresses whether claimant was entitled to unemployment benefits from May 21, 2017 through July 8, 2017.[1]

---

[1] Arguably, the pending remand rendered this appeal interlocutory; however, in the interests of justice, we will decide the merits. Neither party's brief tells us what the Deputy decided on the remand, or whether claimant appealed from that

We derive the following facts from the testimony presented at a telephonic hearing before the appeals examiner on July 14, 2017, and a doctor's report admitted in evidence during the hearing. Beginning in May 2013, claimant, a licensed practical nurse, was employed full-time by a home health care agency. She was still working there at the time of the hearing. However, in April 2017, claimant told her employer that she needed to reduce her work hours to two days a week, because she was going to collect "social security." Claimant's manager documented that claimant told the manager that she was going to "retire" in April but would still work on Tuesday and Wednesday nights. Thus, at her request, claimant reduced her work hours from approximately forty hours per week to sixteen hours per week. Claimant told her manager that she needed to reduce her hours to avoid going over the earnings limit and jeopardizing her social security benefits. The employer's representative testified at the hearing that the employer had full-time work available for claimant, if she were willing to work additional hours, and would be happy to give her additional work.

In response to the examiner's question, the employer's witness testified that claimant never told the employer that she needed "an assignment that was

decision. Nothing in our opinion precludes claimant from separately appealing the remand decision if it was unfavorable to her.

A-0773-17T3

not as physically taxing." She also testified that at the time of the hearing, claimant was caring for a "little boy" and seemed to enjoy the work.

Claimant testified that she was injured in a car accident in "2012" and was still receiving treatment for her injuries. She testified that she switched to the night shift because she thought it would be less physically demanding. She admitted that she asked the employer to reduce her hours because she was able to "get extra money from the retirement." She confirmed that the social security benefits were "widow's benefits" not connected with a disability.

In her testimony, claimant referred to a report from her doctor, but conceded that the doctor did not recommend that she quit her nursing job. She did not tell her employer that she needed an accommodation, but testified that she did not believe that lighter duty would be available. She testified that she was working with the State Division of Vocational Rehabilitation Services to look for a lighter duty job. On cross-examination, it became clear that, if claimant had told her employer that she was having physical difficulty doing her job, the employer would have temporarily taken her off her job and sent her to a doctor for a physical evaluation to be sure she could safely care for her patient. Claimant testified that she did not disclose her physical condition, because she was afraid that the employer would take her off "the case when I've been with

4

this one patient for 11 years." She also stated that she would find it embarrassing and humiliating to be evaluated by the employer's doctor.

The employer testified that lighter duty was available. For example, claimant could be assigned to care for an infant or a small child, weighing 20 pounds, instead of caring for the 100-pound patient who was her current client. Claimant responded that caring for any patient still involved repetitive lifting and stated that her doctor recommended that she only work seven shifts per month. She introduced in evidence a medical report from her doctor, dated July 6, 2017, stating that she had been injured in a 2011 accident and had problems with her spine. The doctor opined in general terms that claimant needed to limit her repetitive lifting, and that seven shifts a month was "as much as she can physically tolerate." However, the doctor did not address how much weight claimant could safely lift.

At the close of the testimony, the employer's witness told the examiner that the employer was going to send claimant to a doctor for an evaluation, pursuant to the company's policy. The outcome of the examination is not reflected in this record.

A-0773-17T3

In her July 20, 2017 decision, the appeals examiner chose to believe claimant's initial explanation to her employer for reducing her hours. The examiner found as fact:

> [Claimant] reduced her hours from forty (40) hours per week to sixteen (16) hours per week, because she was only permitted to earn up to $1,410.00 per month in order to receive social security benefits. This was the only reason the claimant reduced her hours. Continuing full time work was available to the claimant.

In support of that finding, the examiner noted that claimant never requested an accommodation to enable her to continue to work full-time, although full-time work was available. However, as previously noted, the examiner remanded the matter to the Deputy to make an initial determination as to whether claimant was eligible for benefits during weeks of unemployment occurring after July 8, 2017. Thus, claimant presumably had another opportunity to raise the medical issues concerning whether she was able to work full-time on a going forward basis.

On this appeal, claimant raises a series of arguments, which she presents in the following points:

> I. APPELLANT CORDOVA SHOULD BE HELD GENUINELY ATTACHED TO THE LABOR MARKET, AVAILABLE FOR WORK, AND ELIGIBLE FOR BENEFITS.
>
> II. THE AGENCY ERRED IN ITS EVALUATION OF EVIDENCE AND ASSESSMENT OF THE CASE

6

AND SHOULD BE REVERSED AS ARBITRARY AND CAPRICIOUS AND FAILING IN DUE PROCESS AND FUNDAMENTAL FAIRNESS.

III. EVEN IF APPELLANT CORDOVA WAS NOT GENUINELY ATTACHED TO THE JOB MARKET, HER APPROVAL FOR ASSISTANCE WITH THE AGENCY DIVISION OF VOCATIONAL REHABILITATION SHOULD EXEMPT HER FROM THIS REQUIREMENT.

All of those arguments presume the credibility of the testimony claimant gave at the appeal hearing. However, we readily infer from the examiner's decision that the examiner did not believe claimant's hearing testimony. Instead, the examiner found that the initial explanation claimant gave her employer for reducing her hours was the truth. The Board adopted the examiner's findings.

On this appeal, our review of the Board's decision is limited. We will not disturb the Board's findings of fact as long as they are supported by substantial credible evidence. See Brady, 152 N.J. at 210. We owe particular deference to the examiner's decision, as adopted by the Board, concerning the credibility of witness testimony. See Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997). While claimant gave an explanation for her failure to request an accommodation, and for giving her employer what she claimed was a false reason for reducing her work hours, the examiner was not obligated to believe that testimony. In this case, we find no basis to second-guess the appeals

examiner's evaluation of claimant's testimony. Based on the facts as the examiner and the Board found them to be, claimant was not eligible for unemployment benefits during the period of May 21, 2017 through July 8, 2017, because she declined full-time work despite its availability at her workplace. See N.J.S.A. 43:21-4(c)(1).

Accordingly, we affirm the Board's September 14, 2017 decision. However, as previously noted, our opinion is limited to the time-frame encompassed by the Board's decision, and we infer no view as to the merits of any future administrative appeal claimant may file for any period after July 8, 2017. For example, we do not address her claim based on her enrollment in a vocational training program, because she did not enroll in that program until July 13, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION